UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CERTA PROPAINTERS, LTD.**<br>150 Green Tree Road, Suite 1003<br>Oaks, Pennsylvania 19456<br><br>Plaintiff,<br><br>v.<br><br>**WILLIAM SMITH**<br>1307 East Main Street<br>Millville, New Jersey 08332<br><br>Defendant | CIVIL ACTION<br><br>Case No. 08cv2157 |

## COMPLAINT

### THE PARTIES

1. Plaintiff Certa ProPainters, Ltd. ("Certa Pro") is a Massachusetts corporation with its principal place of business located at 150 Green Tree Road, Suite 1003, Montgomery County, Oaks, Pennsylvania 19456.

2. Certa Pro is the national franchisor of Certa ProPainting franchises, which offer painting, decorating and related services to certain customers. There are currently 298 Certa Pro franchisees operating in 42 states.

3. Defendant William Smith ("Smith") is an adult individual and resident of the State of New Jersey with an address of 1307 E. Main Street, Millville, New Jersey 08332.

4. Smith deliberately and intentionally underreported his gross sales to Certa Pro so that his royalties, which are based upon a percentage of his gross sales, would be

less than had he honestly reported his gross sales. Specifically, Smith affirmatively and deliberately, with the intent of defrauding Certa Pro, entered Certa Pro's franchisee intranet system and "unbooked" jobs that he previously booked so that his gross sales would appear to be lower than they actually were. Because Smith pays a royalty fee to Certa Pro based on his gross sales, by fraudulently reducing his gross sales, Smith was able to cheat Certa Pro out of the royalty fees it would have otherwise been entitled to. As a result of Smith's deceitful and unscrupulous acts, Certa Pro commenced this action for fraud and breach of contract.

## JURISDICTION AND VENUE

5. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) in that the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6. Venue for this action is predicated upon 28 U.S.C. §1391(a) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## BACKGROUND

7. Certa Pro franchisees are licensed to use Certa Pro's proprietary marks and to operate under Certa Pro's business system pursuant to the terms and conditions of the Certa Pro franchise agreement entered into between Certa Pro and each franchisee.

8. Under each franchise agreement, Certa Pro franchisees are required to pay Certa Pro an initial franchise fee and an ongoing royalty fee and a national advertising fund fee.

9. On June 19, 2006, Certa Pro and Smith entered into a Certa Propainters Ltd. Franchise Agreement, pursuant to which Smith was granted the right and undertook the obligation to operate a Certa Pro franchise for a term of ten years (the "Franchise Agreement"). A true and correct copy of the Franchise Agreement is attached as Exhibit "A."

10. Pursuant to Paragraph 2.2 of the Franchise Agreement, Smith agreed to pay Certa Pro a monthly royalty fee equal to 5% of Smith's gross sales of his Certa Pro business.

11. Under Paragraph 2.3 of the Franchise Agreement, Smith agreed to report his gross sales to Certa Pro "using such forms or in such format as Certa Pro may specify from time to time."

12. Under Paragraphs 12.1, 12.2 and 12.3, Smith agreed to additional obligations regarding his reporting of gross sales and other financial information to Certa Pro.

13. Prior to November 2007, Certa Pro became aware that Smith was in default of his Franchise Agreement for failing it accurately report gross sales and other material information to Certa Pro. As a result, on November 1, 2007, Certa Pro served Smith with a "Notice of Default and Intent to Terminate". Smith failed to respond to the notice and his Franchise Agreement was terminated.

14. Since that time, Certa Pro has learned that Smith, without Certa Pro's authorization, entered the Certa Pro intranet and intentionally "unbooked" or removed jobs he completed in an attempt to cheat Certa Pro out of its royalty fees. Specifically, by

artificially and fraudulently reducing his gross sales, Smith was able to pay less royalty fees, which are based on a percentage of his gross sales.

15. Certa Pro, like most franchisors, must rely on the honesty of its franchisees in reporting their gross sales and paying the royalties due on those gross sales.

16. Honesty is an important ingredient which Certa Pro looks for in a prospective franchisee. And, honesty is a critical factor for Certa Pro in determining whether an applicant is suitable for becoming a franchisee.

17. In fact, the franchisee's honesty is so important that under the Franchise Agreement Certa Pro is permitted to terminate the Franchise Agreement without providing the franchisee an opportunity to cure if the franchisee makes any "omission or misrepresentation of any material fact relevant to the decision of Certa Pro to enter into" the Franchise Agreement. See Franchise Agreement at Paragraph 16.4.2.

## COUNT ONE – BREACH OF CONTRACT/ACCOUNTING

18. Plaintiff incorporates by reference the averments set forth in paragraphs 1 through 17 above as though set forth at length herein.

19. Certa Pro and Smith entered into the Franchise Agreement under which Smith was required to report the weekly gross sales of his Cert Pro business to Certa Pro and to pay Certa Pro weekly royalty fees based on the gross sales Smith generated in his Certa Pro franchise.

20. Under the Franchise Agreement, Smith agreed that all overdue amounts would bear interest at the rate of 1.5% per month (18% per year). See Franchise Agreement at Paragraph 19.2.

21. Smith also agreed to reimburse Certa Pro its costs, including reasonable attorney's fees, in connection with any dispute arising out of the Franchise Agreement. See Franchise Agreement at Paragraph 18.8.

22. As a result of Smith's fraudulent activity, Certa Pro was forced to cancel the Franchise Agreement two years into its ten-year term. As a result, Certa Pro was deprived of the royalty stream it anticipated and expected to receive from Smith for the remaining balance of the term of the Franchise Agreement.

23. Therefore, in addition to an accounting for and payment for any past due royalties which Smith may owe, Certa Pro is also entitled to its expectation damages, which equal the present value of the future royalty stream Certa Pro would have enjoyed had Smith not committed the fraud which led to the termination of the Franchise Agreement.

24. The amount of Smith's royalty and national advertising fund payments due and owing is peculiarly in the knowledge of Smith, and Certa Pro requires an accounting of Smith's gross sales and payment of the associated royalty fees.

25. Smith's failure to submit accurate gross sales reports and to pay the associated royalties constitute material breaches of the Franchise Agreement.

26. Certa Pro reasonably estimates those damages to exceed $180,000. See Franchise Agreement at Paragraph 2.2.1.

**WHEREFORE**, Certa ProPainters, Ltd. respectfully requests: (1) that this Court order Smith to account for his gross sales through the date his franchise was terminated, and to pay the royalty fees associated with these sales; and (2) that Smith pay Certa Pro its expectation damages, which are equal to the present value of the royalties Smith

5

would have paid to Certa Pro for the remaining term of the Franchise Agreement had Smith's fraudulent activity not forced Certa Pro to terminate the Franchise Agreement, together with interest, costs, attorney's fees, and such further relief as this Court deems just and appropriate.

## COUNT TWO – FRAUD

27. Plaintiff incorporates by reference the averments set forth in paragraphs 18 through 26 above as though set forth at length herein.

28. Smith intentionally misrepresented his gross sales and omitted to disclose to Certa Pro his gross sales as more fully explained above.

29. These misrepresentations and omissions were material to the parties' franchise relationship.

30. Smith intentionally underreported his gross sales and intentionally made changes to or modified his sales figures to make it appear as though his gross sales were lower than they actually were so that he could then pay Certa Pro royalty fees which would be less than they should have been. Smith was aware of the fallaciousness of these acts and acted with reckless disregard regarding the veracity of the information he supplied to Certa Pro.

31. Certa Pro justifiably relied on Smith's representations, and Certa Pro's damages were directly caused by Certa Pro's justifiable reliance on Smith's misrepresentations.

**WHEREFORE**, Certa Pro Painters, Ltd. respectfully requests that this Court enter judgment in its favor and against Smith in an amount equal to the damages Certa

Pro suffered as a result of Smith's fraudulent misrepresentations, together with interest, costs, attorney's fees, and such other relief as this Court deems just and appropriate.

                **FISHER ZUCKER, LLC**

By: _____
Jeffrey Zucker, Esquire
PA Attorney ID No. 71234
21 South 21st Street
Philadelphia, Pennsylvania 19103
(215) 825-3100
Attorney for Plaintiff
Certa ProPainters, Ltd.

Date:   May 8, 2008